First case today is United States v. Spearman. We'll hear first from Mr. Adler. Thank you, Your Honor. May it please the Court? Andy Adler from the Federal Defender's Office on behalf of William Spearman. The District Court's refusal to hold an evidentiary hearing in this case suffers from at least two major flaws. First, the Court effectively required us to prove a Fourth Amendment violation just to get a hearing on our Fourth Amendment claim. That is exactly backwards. The Court even faulted us for not supplying affidavits or declarations from officials with knowledge of the investigation. We have no ability to do that. The way we get that information is by having a hearing, calling them as a witness, and asking them questions under oath. The second flaw with the District Court's order in this case is that it mischaracterized our allegations as alleging only information sharing between two governments, which we acknowledge would not constitute a joint venture. But our allegations went well beyond that. We allege that the FBI used a foreign government as its agent to hack into Mr. Spearman's home computer in Alabama, a search that would have required a warrant had the FBI itself conducted it. Now, we were not required to come forward with any evidence at all to support those allegations just to get a hearing, but we did. That was what I was going to ask. I mean, because don't you, it has to be more than what could fairly be characterized as speculation, right? So what is the evidence that you presented that you think would push it over the line from speculation to entitlement to a hearing? Yes, thank you, Your Honor. So the critical document in this case, again, I don't think we have to come forward with evidence, just allegations. That's the standard, but we have above and beyond that. The allegations, though, that are based on more than speculation. Sure. So here's the critical document. The FBI's internal reports from September 7th and 8th in 2022, three weeks after the foreign government sends the tip over. This document written by agent Matthew Comer says that basically the FBI itself is responsible for obtaining the IP address. It says that in June 2022, there was an operation that we now know to be the Rosenstein raid. And then that allowed the FBI's child exploitation operational unit to conduct offensive technical operations that eventually led to the IP address. That statement in that FBI report is fundamentally inconsistent with the government's entire theory of this litigation, which is that the foreign government independently discovered this information. So I think that document alone warranted a hearing. How is it inconsistent? I guess I'm not following your leap from what the FBI has said about their offensive investigation to this independent provision of the information by the foreign government. Can you connect those two pieces for me? Yeah, I think, well, I can't connect them because I think that's the problem. Well, can you elaborate on your argument as to why this doesn't make sense unless there was much more involvement between our government and the British government? Yes. So this report three weeks after the FBI gets this tip from the foreign government, they prepare this report and it says nothing about a foreign government at all. It says the FBI's own unit is the one to conduct this offensive technical operation that results in the IP address. So I find it hard to reconcile that statement with their theory in this litigation that the foreign government on its own, independently, without any involvement from the FBI, is the one who supplied the IP address. Isn't the FBI's statement about that report is it was just supposed to be a summary of what they were doing. The US, in fact, had an independent investigation. It wasn't supposed to be a comprehensive report. So with that understanding, how is this inconsistent if it wasn't meant to be the complete summary of what it took to capture Mr. Spearman? Yes. So, Your Honor, that comes from the government's brief on appeal on page 27. They say it's an administrative document not intended to comprehensively analyze the investigation. We would like a hearing to examine that. How do we know that? There are five agents on this document. I would like to ask them because the government is now saying that their own report is inadequate or incomplete because it doesn't mention the foreign government. So that is exactly the reason why we'd like to have a hearing. Again, there's two supervisors who approved this report. There's two more that are copied on it, including the agent who prepared the affidavit. Why can't we have a hearing and ask them? Because, I mean, this is the fundamental problem with the government's position in this litigation, which is that they're basically saying, trust us. We had nothing to do with this foreign search. Don't worry about it. It's just an administrative document. Nothing to see here. I mean, that is inconsistent with the way we do things. You know, we don't just blindly accept the government's representations that they're complying with the Constitution. But you concede that the U.S. government was in fact investigating, was in the middle of an investigation of this website. Oh, yes. And that supports our theory here because it is undisputed. The government concedes this multiple times throughout the litigation. It's in the PSI that at the exact same time that this tip comes in from the foreign government, the United States government is sending target files, this malware, to other users on this website to get their IP address. But they're saying at the same time they're not doing that for the main guy, the lead administrator who they really want to find. That seems like a coincidence to me. It's not impossible that it just came in from a foreign government. That's a big coincidence and something that we have the right to explore at an evidentiary hearing. So, I mean, the PSI is very clear about this. Paragraph 38, it details exactly how this went with the target files. Paragraph 43, it shows that this is exactly how they obtained the IP address for Mr. Spearman's code defense. Good, right? That's how they did it. So we know that they're in the middle of doing this. And now the government's saying, yeah, but we didn't do that for Spearman. Okay, maybe not, but that's why we want to have a hearing. And I was really struck by a footnote in the government's brief, footnote 4 on page 25, unsupported by anything in the record for the first time we are now hearing that, in fact, they did obtain these remote access warrants for the usernames associated with Mr. Spearman's account. They didn't file this in the district court. They never gave it to us in discovery. I'm not really sure what to make of it, but what I will say is that it raises a lot more questions than answers. But it shows that the U.S. government was actively investigating this website at the exact same time that this critical piece of information falls into their lap. We also have the FBI's own description of the foreign government as a partner in the warrant applications. Not dispositive, not, doesn't establish that they were, you know, this was a joint venture, but it's another factor, their own description. We also have the tip itself in the record in this case from the foreign government. And it says do not share this with anybody except you can share it with the FBI and any U.S. prosecutor working on the case. What case is that? I don't know, but it seems to suggest that the foreign government is aware of a federal criminal case ongoing. And so our theory in this case is that the United States government basically enlisted or outsourced this search to a foreign government in exactly the same way that the United States itself was doing this domestically. And in doing so, circumvented the warrant requirement that everybody agrees would have been required had the FBI itself done this. The FBI itself is obtaining remote access warrants to do exactly this. And for whatever reason, I don't know why, but I'd like to explore this at an evidentiary hearing. They're not doing this for the main top guy who they're looking for for several years. So let me ask you one thing. You've also said that it violates the Fourth Amendment if a foreign government does a search on U.S. soil, correct? I think that is an open question, Your Honor. Are you raising it here? We are raising it in the context of another reason why we should have an evidentiary hearing. Because if the search did in fact occur on U.S. soil, and honestly, I don't know how it wouldn't because they got the IP address from his computer in Alabama. But if that's true, I think that raises a significant question about whether this general rule about foreign searches, taking it outside the Fourth Amendment, whether that rule applies. If the search is happening here in Alabama, there's no reason why Mr. Spearman should not retain his full Fourth Amendment rights. Did you raise that argument below? No, Your Honor, we did not. But we are raising it here again in the context of another factual dispute about why we should have a hearing. So it's not a standalone issue for you? No, Your Honor, no. Again, it's just another factual question about where this search happened that we don't have an answer. The government has still not told us anything about what happened here. The government claims that it doesn't even know. And yet, the district court here is concluding there are no questions of fact that need to be answered. I think there are only questions of fact that need to be answered here. We don't know exactly what happened. And look, I think at the end of the day, if we weren't entitled to an evidentiary hearing in this case on this motion to suppress, it's really hard to imagine when a criminal defendant would ever be entitled to a motion to suppress. We get them all the time on traffic stops. There's no PC. We get a hearing on that. We cannot be required to prove our case to get a hearing. And I think at the end of the day, that is what the government and the district court are asking this court to adopt. I think that would be a very dangerous break in practice about how these motions to suppress are litigated in our district and in our circuit. And I think they're just requiring too much here for a hearing. Thank you. All right. Thank you very much, Mr. Adler. And we'll hear next from Mr. Handel. Good morning, Your Honors. May it please the Court, Josh Handel for the United States. Mr. Spearman has made an extraordinary claim in this case, that the FBI conspired with a foreign law enforcement agency to violate his Fourth Amendment rights, that the government then concealed that scheme from the magistrate judge and the district court, and that this entire subterfuge was in furtherance of deploying a remote access technique that the FBI was already authorized by warrant to use in unmasking administrators of Website A. With all due respect to my friend on the other side, that claim makes no sense on its own terms. It was also flatly inconsistent with undisputed facts and representations before the district court, including that the foreign law enforcement agency approached the FBI with these tips, that the FBI was not present when the foreign law enforcement agency identified Mr. Spearman's IP address and does not know what technique that agency used. I accept your recounting. What's that based on? So that is all recited in our response to the suppression motion, docket 104, page 9, and it's based as well on representations in the search warrant affidavit that we attached to that response, Your Honor. And that was never tested by the defense, right? The defense never had an opportunity to test the representations that were made in the affidavit that underlied the response to the motion to suppress. Is that correct? Well, they did not. You're correct. The district court did not grant Frank's hearing to test the veracity. You're asking us to accept the representations that the defense was not allowed to test. On what basis should we accept those representations? I think that's an entirely unremarkable proposition under the Supreme Court's decision in Frank's and, you know, its progeny in the Supreme Court and this court. I mean, when a law enforcement officer, an affiant, swears under oath to certain facts, when those are included in the search warrant affidavit that's submitted to the magistrate judge, and the magistrate judge then makes a determination that it's sufficiently detailed and reliable to support probable cause for a warrant to issue, we assume that those facts are true. Let's take another instance in which a magistrate judge relies on an affidavit. The context of a criminal complaint, usually supported by an affidavit, but then we have a preliminary hearing. Under this theory where we should just rely on the representations from the agent, which is appropriate at one stage, but usually there's another stage that the defendant gets to test those representations. And in the context of a criminal complaint, there's usually a preliminary hearing. That's because, I assume, that we want to afford the defense an opportunity to determine whether the representations that are made are actually accurate or maybe the entire picture wasn't presented. How is that different from what we have here, where the defense has made some representations? Again, the government has all the information, so the defense can only represent certain things. So as long as they make specific, provide specific reasons that they request an evidentiary hearing, they're raising specific issues that they would like to test, why shouldn't the defense be afforded the opportunity to have the agent go in the stand, ask the agent questions, explore the representations that have been made? Well, Your Honor, I think, again, the Supreme Court has been abundantly clear that in order to challenge the veracity of representations made in a search warrant affidavit or to assert that there has been either a material misrepresentation or a material omission by the affiant, you have to meet the Frank standard, which is a substantial preliminary showing of such a misrepresentation or material omission. But even if this court believes that we are outside of the variety evidentiary hearing box, you've still said that the allegations must be, quote, sufficiently definite, specified, detailed, and non-conjectural to enable the court to conclude that a substantial claim is presented. And the district court did not abuse its discretion in determining that Mr. Spearman had not put forward a sufficiently non-conjectural basis here. What do you say, though, in response to Mr. Adler's point that there are some sort of weird things about this whole situation, such as the fact that the FBI's own report doesn't mention the tip having come from the foreign government, and that's, you know, three weeks after it supposedly did? Sure. So I do, I want to address that because, you know, I think it's the best point in his favor, these two internal FBI memos that are... And that's why I'd like you to address it. Thank you for that opportunity, Your Honor. So as I believe Judge Branch was discussing with my friend on the other side, these are internal memos. They are not being sworn out in front of a magistrate. They are not designed to provide, you know, any sort of meticulous compendium. But in some ways, maybe that makes them, you know, more reliable because they're just being written as to, you know, maybe that makes them sort of more candid in a way, more open with exactly what's going on. I mean, why isn't that enough to make a substantial showing or to other, for Frank's hearing, or to otherwise make a specific enough showing that's non-conjectural for any other kind of evidentiary hearing? Sure. So I think, you know, just kind of as an initial point, I think it inverts our general expectation that someone making an unsworn representation in a memo would have more reliability than a sworn affidavit before a magistrate judge. I take your point. I'm saying, you know, sometimes though, when you're not having to think through everything exactly that you're saying, you're a little bit less guarded, and maybe it gives some concern. Granted. I also think maybe you're a little bit less precise, right? And you can conflate together some things that are happening around the same time. And I think that's what happened here, right? I mean, I take my friend on the other side to say that there's something suspicious or fishy about the fact that the Foreign Law Enforcement Agency and the FBI were conducting a lot of these operations and these investigations at the same time. But almost everybody in the world was looking for this guy. Almost everyone in the world was going after this site because it was the largest purveyor of child sexual abuse material in the world. No one knew where these users were located. They were, I mean, we have since found out that they were spread across multiple countries. So I don't think there's anything at all unusual about the fact that the FBI was engaged in offensive technical operations at the same time that the Foreign Law Enforcement Agency was conducting its own investigation. And I think that what we see in these internal memos is just a conflation of these things that are going on at the same time. On the one hand, you have the FBI obtaining warrants to employ the remote access technique to try to unmask the users and administrators of website A. And entirely independently from that, you had a Foreign Law Enforcement Agency reach out to the FBI with Mr. Spearman's IP address. And these were just kind of bunched together in the same sentence. I certainly don't think this is the smoking gun that Mr. Spearman wants it to be and, frankly, needs it to be. Also, this explanation was in front of the district court. Granted, it was not included in the affidavit that supported the search warrant because at that point, we didn't have all of Mr. Spearman's theory about the joint venture and things like that. But we explained these reports in our response to his suppression motion. That's at Docket 104. I'm sorry. The explanation came from the attorneys, not the agent? Yes, that's correct, Your Honor. Okay. So again, the defense never got to test that from the agent, him or herself, to figure out if there was an actual conflation. That's just the explanation from the attorneys? It's the explanation from the attorneys. It was before the district court. I an agent would have come in and repeated on the stand the exact same representations that were sworn to in the affidavit and contained. Then there would have been a cross-examination, though, right? Yes. That's usually what happens. The agent gets on the stand. The AUSA says, do you swear to everything in your affidavit? Yes. And you're often the end of the examination from the AUSA. But then there's a cross-examination and who knows what comes out there, right? Well, sure. But I think what you have here is kind of a minor wrinkle based on these two internal memos. It is fully explained in the government's response. There's not a compelling rebuttal from Mr. Spearman. And the district court has these papers in front of it. And I don't think it's an abuse of the district court's quite wide discretion here to manage its docket and determine when hearings are appropriate. It was not an abuse of the district court's discretion to determine that it could decide this motion on the papers. I would also just point out, again, I think my friend mentioned it a couple of times, this idea that the FBI was authorized by warrant to employ the remote access technique that Mr. Spearman hypothesizes the FBI instead asked the Foreign Law Enforcement Agency to use on its behalf. I just don't think there's, I mean, certainly there is no basis for that in the record. There's also just no logical reason to think that that's what happened. As we explained in our brief, page 25, note four, we did actually include Mr. Spearman's suspected usernames in the list of usernames against which we employed the remote access technique. We were warranted to do so. We were broadly warranted to use the remote access technique in unmasking the administrators and users of website A. Some of those warrants are included at docket 107-3 and docket 107-5. So he was fully aware that we were authorized to use this technique. We had used it. It didn't work as to Mr. Spearman. And we ended up getting that information instead from these tips. But that's all that we have here. And, you know, this idea that we're running, ask global consumers. When you say it didn't work as to Mr. Spearman, so the technique did not work as Mr. Spearman, is that your representation? Yes. And that's what we have at note four in our brief as well. So I'm not just kind of saying that on my feet here. I'm happy to answer any further questions that the court has on this issue or on sentencing. If there are none, we respectfully request that you affirm the judgment below. Thank you. All right. Thank you very much, Mr. Adler. You have five minutes. Let me just start by asking you, you know, you've got a hard standard of review here. You've got abusive discretion. Why was this an abuse of discretion to deny an evidentiary hearing? I understand that standard of review, but at the same time, the standard to get a hearing is really should not be that high, should not require us to come in and prove our entire case. It can't be like that. And we have much more, much more than we are ever required here with all of the documents. I want to respond to that. I'm sorry, just so I can make sure I'm understanding your argument. Are you saying that abuse of discretion is not the correct standard of review for denial of an evidentiary hearing? No, I'm not. We agree with that is the standard, but I think it has to be viewed on the lens of underlying standard to get a hearing where we are not required to come forward with actual record evidence. And we've done that here. That's the difference that you see in a lot of these other cases where we have the FBI's own documents. We have the warrants themselves. I want to respond to the whole bit about Frank's. We are not challenging. We are relying on the warrants, not challenging them. We are relying on the foreign partner language in the warrant in this case, which contrasts with the Rosenstein warrants, which talks about information independently developed by foreign countries. We don't have that in this warrant, even though it's prepared by the same agent. And the standard for Frank's is a substantial preliminary showing. This isn't a Frank's hearing. We're not challenging the warrant. We are challenging the warrantless search that precedes the warrant in this case. So this is not under the standard of Frank's, and the district court didn't understand that to be the case. I want to respond to the point that was made about footnote four in the brief because the government just said something brand new, which was that they actually did attempt to execute these remote access warrants against the usernames associated with Mr. Spearman. I'm not aware of that. That is a new fact for me. And then it begs the question, Judge Kidd, okay, so if they were unsuccessful, maybe that's a reason why they went to the foreign government to do this, because maybe the foreign government has better technological capabilities than we had. Maybe they wanted somebody else to give it a shot. We don't know. That's why we need the hearing. Those warrants, by the way, I've never seen them. I don't know where they come from. So at the end of the day, we're left with a lot of representations by the government. The government referred numerous times to its response to our motion to suppress, to its representations in its brief in this court. Again, this is very different from having somebody on the stand, subject to cross-examination. Exactly right, Judge Kidd. That's how we get the truth in our system. We don't just rely on the word of the government in its briefs, its pleadings in this case. But even if you look at what the government is saying in its briefs, in its pleadings, I mean, there are lots of fishy things going on here. The government says, well, it's not fishy because there's no smoking gun. We don't need a smoking gun here. But if this isn't a smoking gun, the FBI reports, it's as close to that as we can get. And let me make sure that when you say there are fishy things going on here, I want to make sure that I can compile a list of what you are saying are fishy things. So certainly when you first got up to the podium, you were saying that we have an internal report that talks about an offensive investigation by the FBI without mentioning any piece coming from an international partner. So that's what you would call a fishy thing, correct? Correct. But it also credits the FBI themselves with uncovering the IP address. And in connection with the timing, this is just three weeks after the tip came in. So I consider that suspicious or coincidental. Okay, so what other fishy things? We've got the mention of the foreign partner. So we know there is a relationship here between the United States... How is that fishy? U.S. absolutely acknowledges a lot of foreign partners in transnational investigations. Having a relationship is not fishy. The question is, what was the nature of that relationship here? How can we discern that without any hearing? So we're not saying that the relationship is fishy, but it might be if that relationship... That sounds a little bit like a fishing expedition. So I'm just trying to catalog the things, the holes, the gaps, the fishy things. Okay, so then we have the tip, the reference to the federal criminal case, which we don't know what that means. It suggests, again, more participation, more awareness among the governments here. But again, there's a certain point where we cannot be required to prove our case. There are lots of questions that are being raised. The government is now saying that their own reports are incorrect. That is what they just said. They're not precise, was the words that the government just spoke. I'm not sure what we're supposed to do with that. Their own reports... Let me ask you a question because you've said you're not making a Franks challenge here. Yeah. So what is the standard that you think governs whether there should be an evidentiary hearing, and where are you taking it from? And it seems kind of like you are making a Franks... I mean, you're saying we're relying on the warrant, but you're also, at the same time, saying we think the warrant is omitting enough facts that it's effectively lying. So how can you thread that needle? Sure. I appreciate that. So the standard, I don't think there's any question about. It comes from... I think we both cite the same cases, Richardson, Smith, and it goes back to Poe in 1972 decision. But it's a bit of a vague standard. It's all about how you apply it to the particular facts of the case. Sufficiently specific, definite, non-conjectural, substantial claim that, if proven, would result in relief. So it's a question of application, not what the actual standard is. As far as your point about Franks, I take that point. All I'm saying is that this isn't a traditional Franks situation where we are saying that the warrant itself is invalid. Because if you take something out where there is omission, then you don't have PC. That's not what we're saying. Our focus of this challenge is not the warrant. It is the preceding warrantless search to get the IP address. If they don't get that IP address, there is no warrant. The warrant itself, in this case, should be viewed as fruit of the poisonous tree. It is tainted. That is the McGough case that we cited, both below and in our brief. And that's also why the good faith exception would not apply if we are right about what happened, which, again, we can establish only through an evidentiary hearing, which we believe we were erroneously denied in this case. Thank you. Thank you very much. All right.